## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK ROBERTS, on behalf of himself and others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| JUDGMENT ACQUISITIONS UNLIMITED and CHAMPION FUNDING INC., | |
| Defendant. | |

_____

### Nature of the Action

1.      This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., for the benefit of certain Massachusetts consumers who have been the subject of debt collection efforts by Judgment Acquisitions Unlimited ("JAU") and Champion Funding Inc. ("Champion") (collectively, "Defendants").

2.      By way of background, Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.*, § 1692(a).

3.      The Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a significant

concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4.      And over one-third of the debt collection complaints the CFPB receives involve debt collectors' attempts to collect debts that consumers did not owe.[2]

5.      To address this serious problem in the debt collection industry, the FDCPA requires debt collectors to send consumers "validation notices" at the outset of the relationship, which must contain certain information about consumers' alleged debts and their rights with respect to those debts. 15 U.S.C. § 1692g(a).

6.      A debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id.*

7.      As noted by the CFPB and the Federal Trade Commission, "this validation requirement was a 'significant feature' of the law that aimed to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Hernandez*, No. 14-15672, at 5 (quoting S. Rep. No. 95-382, at 4 (1977)).

8.      Part and parcel to the validation notice is a 30-day window for the consumer to dispute his alleged debt, seek verification of the debt, or seek creditor information regarding the debt. 15 U.S.C. § 1692g(a).

---

[1]      *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf.

[2]      *See* Consumer Financial Protection Bureau, *Fair Debt Collection Practices Act—CFPB Annual Report 2018* at 15 (2018), https://www.consumerfinance.gov/data-research/research-reports/fair-debt-collection-practices-act-annual-report-2018/.

9.      Pertinent here, "[a]ny collection activities and communication during th[is] 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b).

10.      This case centers on the overshadowing and deceptive language Defendants use in initial written communications to Massachusetts consumers.

### Parties

11.      Mark Roberts ("Plaintiff") is a natural person who at all relevant times resided in Suffolk County, Massachusetts.

12.      Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

13.      Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a judgment arising from a loan used to purchase a vehicle for personal use (the "Debt").

14.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

15.      JAU is a company with its principal office in Norfolk County, Massachusetts.

16.      JAU is a "licensed and bonded collection agency founded in 2001 that collects commercial, retail, and judgment debts."[3]

17.      JAU uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

---

[3]      *See* https://judgmentacquisitions.com/about/ (last accessed August 8, 2019).

18.     JAU is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

19.     Champion is a corporation with its principal office in Norfolk County, Massachusetts.

20.     According to its Articles of Incorporation and Annual Report, Champion is a purchaser of charged-off debt portfolios.

21.     Champion uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts

22.     Champion acquired the Debt and placed it with JAU for collection.

23.     At all relevant times, JAU acted on behalf of, and as an agent of, Champion.

24.     At the time Defendants attempted to collect the Debt from Plaintiff, the Debt was in default.

25.     Defendants treated the Debt as if it were in default from the time that Defendants acquired it for collection.

26.     Defendants are each a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

### Jurisdiction and Venue

27.     This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

28.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as the acts and transactions giving rise to Plaintiff's action occurred in this district, and as Defendants transact business and maintain their principal offices in this district.

**Factual Allegations**

29.     On or about June 19, 2019, JAU, on behalf of Champion, sent a written communication to Plaintiff in connection with the collection of the Debt.

30.     A true and correct copy of the June 19, 2019 communication to Plaintiff is attached as Exhibit A.

31.     This June 19, 2019 communication to Plaintiff was the first communication Plaintiff received from Defendants about the Debt.

32.     Plaintiff did not receive any other communications from Defendants within five days of the June 19, 2019 communication.

33.     The June 19, 2019 letter to Plaintiff opened with the following:

> Your current unpaid judgment has been purchased by **<u>Champion Funding Inc.</u>** and placed with Judgment Acquisitions Unlimited for immediate collection activity.

Ex. A at 1.

34.     The letter later advised Plaintiff:

> We understand that this account is several years old, changed hands twice, and been dormant for a short time, but you likely have known that this debt is not fully paid. Massachusetts judgments are valid for 20 years with 12%. If you have made some/any/all payments toward the debt or believe this case settled or dismissed, please forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all. Otherwise we will assume the debt to be valid and you may be subject to all fees and costs associated in the enforcement of the judgment and forfeit your chance to negotiate.

*Id*.

35.     The reverse side of the June 19, 2019 letter contained the following disclosure:

> Unless you notify this office within thirty (30) days after the receipt of this notice that you dispute the validity of this debt, or any portion thereof, this office will assume the debt is valid. *Judgment Acquisitions Unlimited also requests that you send a letter stating the nature of your dispute with corresponding documents to support your claim.* If you notify this office in writing within thirty (30) days

from receiving this notice, Judgment Acquisitions Unlimited will obtain verification of the debt or a copy of such judgment verification. Judgment Acquisitions Unlimited will provide you with the name and address of the original creditor, if different from the current creditor, if requested by you within thirty (30) days of this notice. You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for ten (10) days unless you provide written confirmation of the request post marked or delivered within seven (7) days of such request. You may terminate this request by writing to the collection agency.

*Id*. at 2 (emphasis added).

## Class Action Allegations

36.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and (b)(3) on behalf of a class and subclass consisting of:

### The Class

All persons (a) with a Massachusetts address, (b) to whom Judgment Acquisitions Unlimited mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) which stated (i) "[i]f you have made some/any/all payments toward the debt or believe this case settled or dismissed, please forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all. Otherwise we will assume the debt to be valid and you may be subject to all fees and costs associated in the enforcement of the judgment and forfeit your chance to negotiate," or (ii) "Judgment Acquisitions Unlimited also requests that you send a letter stating the nature of your dispute with corresponding documents to support your claim."

### The Subclass

All persons (a) with a Massachusetts address, (b) to whom Judgment Acquisitions Unlimited, on behalf of Champion Funding Inc., mailed an initial debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) which stated (i) "[i]f you have made some/any/all payments toward the debt or believe this case settled or dismissed, please forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all. Otherwise we will assume the debt to be valid and you may be subject to all fees and costs associated in the enforcement of the judgment and forfeit your chance to negotiate," or (ii)

"Judgment Acquisitions Unlimited also requests that you send a letter stating the nature of your dispute with corresponding documents to support your claim."

37.     Excluded from the class and subclass are Defendants, their respective officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which either defendant had or has controlling interests.

38.     The proposed class and subclass satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

39.     The exact number of class and subclass members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

40.     The proposed class and subclass are ascertainable because they are defined by reference to objective criteria.

41.     In addition, upon information and belief, the names and addresses of all members of the proposed class and subclass can be identified in business records maintained by Defendants.

42.     The proposed class and subclass satisfy Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the class and subclass.

43.     To be sure, Plaintiff's claims and those of the members of the class and subclass originate from the same standardized initial debt collection letter utilized by JAU, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class and subclass.

44.     Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the class and subclass and has retained counsel experienced and competent in class action litigation.

45.     Plaintiff has no interests that are contrary to or in conflict with the members of the class and subclass that he seeks to represent.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

47.     Furthermore, as the damages suffered by individual members of the class and subclass may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

48.     There should be no difficulty in the management of this action as a class action.

49.     Issues of law and fact common to the members of the class and subclass predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the class and subclass.

50.     Among the issues of law and fact common to the class and subclass are:

a.  Defendants' violations of the FDCPA as alleged herein;

b.  whether Defendants are each a debt collector as defined by the FDCPA;

c.  whether Defendants' demand for information supporting a debt dispute violates 15 U.S.C. § 1692g(b);

d.  the availability of statutory penalties; and

e.  the availability of attorneys' fees and costs.

**Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(b)**

51.     Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 50 above.

52.     The FDCPA at 15 U.S.C. § 1692g(b) provides:

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

(emphasis added).

53.     The June 19, 2019 letter advised Plaintiff:

If you have made some/any/all payments toward the debt or believe this case settled or dismissed, please forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all. Otherwise we will assume the debt to be valid and you may be subject to all fees and costs associated in the enforcement of the judgment and forfeit your chance to negotiate.

*See* Ex. A.

54.     The reverse side of the June 19, 2019 letter contained the following disclosure:

Unless you notify this office within thirty (30) days after the receipt of this notice that you dispute the validity of this debt, or any portion thereof, this office will assume the debt is valid. *Judgment Acquisitions Unlimited also requests that you send a letter stating the nature of your dispute with corresponding documents to support your claim.* If you notify this office in writing within thirty (30) days from receiving this notice, Judgment Acquisitions Unlimited will obtain verification of the debt or a copy of such judgment verification.

*Id.* (emphasis added).

55.     The manner in which JAU conveyed the validation notice required by 15 U.S.C. § 1692g(a) in the June 19, 2019 letter was ineffective and was overshadowed and contradicted by other language in the letter.

56.     In the alternative, JAU, through the June 19, 2019 letter, failed to explain an apparent, though not actual, contradiction that its letter creates regarding statutorily mandated disclosures that JAU was required to provide to Plaintiff.

57.     Specifically, the requirement in the June 19, 2019 letter that Plaintiff "send a letter stating the nature of your dispute with corresponding documents to support your claim" implied to the least sophisticated consumer that any dispute of the Debt would need to be supported by information or documentation, that he needed to provide a valid reason to JAU to dispute the Debt and invoke his rights under the FDCPA, and that any such dispute must be made in writing. *See, e.g.*, *McCurdy v. Prof'l Credit Serv.*, No. 6:15-CV-01498-AA, 2015 WL 6744269, at *3 (D. Or. Oct. 30, 2015) ("The least sophisticated consumer could read the additional language to require a consumer intending to dispute a debt to do so in writing and to submit justification for the dispute. In other words, the least sophisticated consumer would be encouraged to waive her right to challenge the validity of the debt by a phone call or without providing justification for contesting the debt.").

58.     Moreover, the requirement that Plaintiff "forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all" otherwise JAU would "assume the debt to be valid and you may be subject to all fees and costs associated in the enforcement of the judgment and forfeit your chance to negotiate" implied to the least sophisticated consumer that the only way he could prevent JAU from treating the debt as valid would be to forward to JAU supporting written documentation.

59.     But the only action a consumer must take to dispute a debt pursuant to 15 U.S.C. § 1692a(3)—to rebut the presumption of validity of the debt—is to call the debt collector within the thirty-day validation period and state that he disputes the debt.

60.     Indeed, in disputing a debt, the consumer need not (1) specify the nature of the dispute, *Frey v. Satter, Breyer & Spires*, No. 98 C 3957, 1999 WL 301650, at *5 (N.D. Ill. May 3, 1999); (2) provide the debt collector a valid reason for the dispute, *Mendez v. M.R.S. Assocs.*, No. 03 C 6753, 2005 WL 1564977, at *4 (N.D. Ill. June 27, 2005); or (3) provide any documentation to support the dispute. *Forsberg v. Fidelity Nat'l Credit Serv., Ltd.*, No. 03CV2193–DMS(AJB), 2004 WL3510771, at *4 (S.D. Cal. Feb. 26, 2004).

61.     The June 19, 2019 letter therefore overshadowed and was inconsistent with the validation notice mandated by the FDCPA, in violation of 15 U.S.C. § 1692g(b).

62.     Champion, as a debt collector, is vicariously liable for the illegal acts undertaken by JAU on its behalf.

63.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal alleged debt.

64.     And the content of the June 19, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

65.     Specifically, where a consumer is told that he must provide documentation to support any dispute, he is likely to believe that any dispute must be in writing—as opposed to by telephone—and that disputing the debt would be pointless unless he possessed documentation to support the dispute.

66.     But a consumer neither need provide any documentation to dispute a debt, nor a valid reason for such a dispute.

67.     Instead, a simple phone call to the debt collector stating the debt is disputed is enough to trigger certain protections for the consumer under the FDCPA. *See, e.g.*, *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) ("Oral dispute of a debt precludes the

debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute. Additionally, if a consumer owes multiple debts and makes a payment, the debt collector is prohibited from applying such payment to a debt which is in dispute.").

68.     And a simple written dispute—without the need to provide any supporting documentation—is enough to trigger additional protections for the consumer. *See, e.g.*, *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1240 (D. Haw. 2001) (holding that a debt collector violated the FDCPA by confusing debtor into thinking he had to dispute the alleged debt by providing supporting documentation).

69.     Here, Plaintiff was unaware that he could dispute the debt by telephone and need not provide any documentation to do so, and the June 19, 2019 letter led him to believe that he could only dispute the debt in writing by sending valid documentation.

70.     The risk of harm is compounded by the fact that, as the June 19, 2019 letter indicates, the Debt is old, and has changed hands several times, making it less likely that Plaintiff, or any other consumer, would possess "corresponding documents to support" a dispute. *See* Ex. A at 2.

71.     In addition, Defendants' actions invaded a specific private right created by Congress, and the invasion of said right creates a risk of real harm.

**Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e**

72.     Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 50 above.

73.     The FDCPA at 15 U.S.C. § 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

74.     The June 19, 2019 letter advised Plaintiff:

> If you have made some/any/all payments toward the debt or believe this case settled or dismissed, please forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all. Otherwise we will assume the debt to be valid and you may be subject to all fees and costs associated in the enforcement of the judgment and forfeit your chance to negotiate.

*See* Ex. A at 1.

75.     The reverse side of the June 19, 2019 letter contained the following disclosure purporting to comply with the FDCPA's validation notice requirement:

> Unless you notify this office within thirty (30) days after the receipt of this notice that you dispute the validity of this debt, or any portion thereof, this office will assume the debt is valid. *Judgment Acquisitions Unlimited also requests that you send a letter stating the nature of your dispute with corresponding documents to support your claim*. If you notify this office in writing within thirty (30) days from receiving this notice, Judgment Acquisitions Unlimited will obtain verification of the debt or a copy of such judgment verification.

*Id*. at 2 (emphasis added).

76.     The requirement in the June 19, 2019 letter that Plaintiff "send a letter stating the nature of your dispute with corresponding documents to support your claim" implied to the least sophisticated consumer that any dispute of the Debt would need to be supported by information or documentation, that he needed to provide a valid reason to JAU to dispute the Debt and invoke his rights under the FDCPA, and that any such dispute must be made in writing.

77.     Moreover, the requirement that Plaintiff "forward any documentation you have so we can fully credit the account proper credits and/or dismiss the case at the court once and for all" otherwise JAU would "assume the debt to be valid and you may be subject to all fees and

costs associated in the enforcement of the judgment and forfeit your chance to negotiate" implied to the least sophisticated consumer that the only way he could prevent JAU from treating the debt as valid would be to forward to JAU supporting documentation.

78.     But the only action a consumer must take to dispute a debt pursuant to 15 U.S.C. § 1692a(3)—to rebut the presumption of validity of the debt—is to call the debt collector within the thirty-day validation period and state that he disputes the debt.

79.     Indeed, in disputing a debt, the consumer need not (1) specify the nature of the dispute, (2) provide the debt collector a valid reason for the dispute, or (3) provide any documentation to support the dispute.

80.     The offending language in the June 19, 2019 letter to Plaintiff therefore constitutes a deceptive and misleading representation in connection with the collection of the Debt, in violation of 15 U.S.C. § 1692e.

81.     Champion, as a debt collector, is vicariously liable for the illegal acts undertaken by JAU on its behalf.

82.     The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally and regarded his personal alleged debt.

83.     And the content of the June 19, 2019 communication created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA.

84.      Specifically, where a consumer is told that he must provide documentation to support any dispute, he is likely to believe that any dispute must be in writing—as opposed to by telephone—and that disputing the debt would be pointless unless he possessed documentation to support the dispute.

85.     But a consumer neither need provide any documentation to dispute a debt, nor a valid reason for such a dispute.

86.     Instead, a simple phone call to the debt collector stating the debt is disputed is enough to trigger certain consumer protections under the FDCPA.

87.     And a simple written dispute—without the need to provide any supporting documentation—is enough to trigger additional protections for the consumer.

88.     Here, Plaintiff was unaware that he could dispute the debt by telephone and need not provide any documentation to do so, and the June 19, 2019 letter led him to believe that he could only dispute the debt in writing by sending valid documentation.

89.     The risk of harm is compounded by the fact that, as Defendant's letter indicates, the Debt is old, and has changed hands several times, making it less likely that Plaintiff, or any other consumer, would possess "corresponding documents to support" a dispute. *See* Ex. A at 2.

90.      In addition, Defendants' actions invaded a specific private right created by Congress, and the invasion of said right creates a risk of real harm.

91.     Finally, Defendants' action created a risk of harm to Plaintiff's concrete interest established by the FDCPA to be free of any deceptive, or misleading representation or means in connection with the collection of any debt.

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Adjudging and declaring that Defendants violated 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1692e;

C.  Awarding Plaintiff and members of the class and subclass statutory damages pursuant to 15 U.S.C. § 1692k;

D.  Awarding members of the class and subclass actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k;

E.  Enjoining Defendants from future violations of 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1692e with respect to Plaintiff and the class and subclass;

F.  Awarding Plaintiff and members of the class and subclass their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

G.  Awarding Plaintiff and the members of the class and subclass any pre-judgment and post-judgment interest as may be allowed under the law; and

H.  Awarding other and further relief as the Court may deem just and proper.

### Trial by Jury

Plaintiff is entitled to and hereby demands a trial by jury.

Dated August 8, 2019

/s/ *Kevin V. K. Crick*
Kevin V. K. Crick
Rights Protection Law Group, PLLC
100 Cambridge St., Suite 1400
Boston, MA 02114
Tel: (844) 574-4487
Fax: (888) 622-3715
k.crick@rightsprotect.com
Local Counsel for Plaintiff and the proposed class

James L. Davidson*
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, Florida 33487
Tel: (561) 826-5477

Fax: (561) 961-5684
jdavidson@gdrlawfirm.com
Lead Counsel for Plaintiff and the proposed
class

*to seek admission pro hac vice